UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANGELLA KRISTINE HOULBJERG, | ) |
| | ) CASE NO. C13-531-MJP-MAT |
| Plaintiff, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) RE: SOCIAL SECURITY |
| CAROLYN W. COLVIN, Acting | ) DISABILITY APPEAL |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff Angella[1] Kristine Houlbjerg proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be affirmed.

//

//

---

[1] Although Plaintiff's briefing refers to her as "Angela," the record makes clear that Plaintiff actually spells her first name "Angella." *See* Dkt. 4 at 2.

REPORT AND RECOMMENDATION
PAGE -1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1976.[2] She graduated from high school and completed two years of college, and previously worked as a gas station attendant, a gift-shop cashier, custom-framing assistant, and prep cook. (AR 46-47, 250, 255.)

Plaintiff filed concurrent applications for DIB and SSI on August 10, 2009, alleging disability beginning November 11, 2004. (AR 213-14.) She later amended her onset date to January 15, 2009. (AR 33.) Her applications were denied at the initial level and on reconsideration, and Plaintiff requested a hearing. (AR 150-156, 158-68, 172-74.)

On July 12, 2011, ALJ Laura Valente held a hearing, taking testimony from Plaintiff and a vocational expert. (AR 29-79.) On August 22, 2011, the ALJ issued a decision finding Plaintiff not disabled. (AR 11-22.)

Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on February 8, 2013 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The ALJ found initially that Plaintiff's applications were barred by *res judicata*, but

---

[2] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

then proceeded in the alternative to follow the five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since November 11, 2004, the original alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found Plaintiff's degenerative disc disease status post whiplash injury, anxiety disorder, and depressive disorder to be severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to lift/carry up to 50 pounds occasionally and 25 pounds frequently, and able to stand and/or walk up to six hours of an eight-hour workday and sit without restrictions. She can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, and never climb ladders, ropes, or scaffolds, or crawl. She should avoid concentrated exposure to hazards such as machinery and heights and pulmonary irritants. She has sufficient concentration to understand, remember, and carry out simple, routine tasks such as the tasks found in unskilled work with a specific vocational preparation level of up to 2. She can work superficially with the general public (in the same room or vicinity), but she cannot respond to their demands or requests other than to refer them to someone else. She can work in the same room or vicinity as co-workers, but cannot work in coordination with them. With that assessment, the ALJ

found Plaintiff unable to perform her past relevant work.

The ALJ proceeded in the alternative to step five of the sequential evaluation, where the burden shifts to the Commissioner to demonstrate that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a vocational expert's testimony, the ALJ found Plaintiff capable of performing other representative jobs, such as bench assembler, bottle packer, and cleaner/housekeeper.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred by (1) finding that *res judicata* barred Plaintiff's applications; (2) failing to include Plaintiff's chronic headaches, panic disorder with agoraphobia, and posttraumatic stress disorder (PTSD) as severe impairments at step two; (3) rejecting medical opinions provided by treating psychiatrist Beth Sandman, M.D., and counselor Jennifer Dieringer, LICSW, and failing to account for all limitations identified by the State agency consultant; (4) discounting the credibility of her subjective testimony; and (5) failing to account for all limitations in the RFC assessment. She asks that the ALJ's decision be reversed and her claim remanded for an award of benefits or, in the alternative,

for further proceedings. The Commissioner argues the ALJ's decision is supported by substantial evidence and should be affirmed.

### *Res Judicata*

In general, an ALJ's determination that a claimant is not disabled "creates a presumption that the claimant continued to be able to work after that date." *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). The presumption does not apply, however, if the claimant raises a new issue in a subsequent application, "such as the existence of an impairment not considered in the previous application." *Id.* The claimant need not establish that the new impairment is severe; merely alleging the existence of a new impairment is sufficient to defeat the presumption. *See Vasquez v. Astrue*, 572 F.3d 586, 598 n.9 (9th Cir. 2008).

In this case, Plaintiff alleged new impairments not considered in the previous application: headaches and PTSD.[3] *Compare* AR 14-15 *with* AR 133-36. Regardless of whether the ALJ should have included one or both of these impairments as severe impairments at step two, they were nonetheless alleged in the new application and not considered in the previous application, and thus the presumption of continuing non-disability does not apply. The ALJ erred in applying *res judicata*, but because she continued on with the five-step process in the alternative, this error is harmless.

### Step Two

Plaintiff contends that the ALJ should have included headaches, panic disorder with agoraphobia, and PTSD as severe impairments. At step two, "[a]n impairment or

---

[3] Plaintiff also alleged fibromyalgia and panic disorder in the new application, but those impairments were considered in the previous decision.

REPORT AND RECOMMENDATION
PAGE -5

combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996 (quoting Social Security Ruling (SSR) 85-28). Plaintiff points to evidence showing that her headaches lasted all day, occurred 2-4 times per month, and caused photophobia and nausea; she also cites evidence suggesting that her panic disorder and PTSD made it difficult for her to leave the house or respond to stress. Dkt. 20 at 15.

The ALJ rejected headaches at step two on the grounds that "there is no objective medical evidence to show that the claimant's headaches are more than transient or they cause significant vocational limitations," and rejected panic disorder with agoraphobia as unsupported by the medical evidence as a diagnosis. (AR 14.) The ALJ's decision does not mention PTSD.

As to the headaches, the Commissioner notes that no acceptable medical source diagnosed Plaintiff's headaches, although such a diagnosis is a predicate to the existence of a medically determinable impairment. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). One physician referred to Plaintiff's headaches as "well-controlled," and apparently considered them to be a symptom of the neck and back pain Plaintiff suffered after her whiplash injury. (AR 293-94.) Given that the ALJ included degenerative disc disease status post whiplash injury as a severe impairment at step two, and Plaintiff argues that this impairment equates to a headache (Dkt. 23 at 4:9-10), it is unclear how the ALJ's failure to list headaches as a separate impairment at step two could have had any impact on the ALJ's decision, let alone a prejudicial one. Furthermore, because the only reference to headaches by an acceptable

medical source indicates that Plaintiff's headaches are well-controlled, the ALJ did not err in finding her headaches to be not severe. *See Allen v. Comm'r of Social Sec. Admin.*, 498 Fed. Appx. 696, 697 (9th Cir. 2012) (holding that an impairment that can be adequately controlled by medication is not severe).

As to panic disorder with agoraphobia and PTSD, the Commissioner argues that the ALJ considered the symptoms caused by those diagnoses in considering Plaintiff's anxiety disorder and depression, and thus any error in failing to include those impairments at step two is harmless. Dkt. 22 at 22-23. Specifically, the Commissioner notes that the ALJ mentioned Plaintiff's panic attacks, social withdrawal, low motivation, grief, sleeplessness, flashbacks, hypervigilence, daily crying episodes, lack of energy, confusion, irritability, and difficulty responding to stress. (AR 14, 17-20.) Plaintiff seems to acknowledge that the ALJ considered the symptoms caused by PTSD and panic disorder with agoraphobia, but argues that this was nonetheless insufficient because the ALJ "failed to accept the diagnoses for which [she] received treatment." Dkt. 23 at 5. Plaintiff has failed to show that any error was harmful, and thus this assignment of error fails. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding an ALJ's failure to list impairment as severe at step two harmless where the related limitations were considered at step four).

## Credibility

Plaintiff contends that the ALJ erred in discounting her credibility. The ALJ provided two reasons to do so, specifically daily activities and medical evidence inconsistent with her allegations. (AR 17-18.) According to Plaintiff, neither of the ALJ's reasons is clear and convincing. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

01        As to Plaintiff's daily activities, the ALJ noted that though she claimed to have social

02 limitations, Plaintiff was able to maintain a dating relationship for 16 years, and had lived

03 with her grandparents for a number of years.  (AR 17.)  According to the ALJ, these

04 capabilities show that she has an ability to get along with and be around other people, contrary

05 to her allegations.  (*Id.*)  The ALJ also asserted that Plaintiff's ability to care for three birds

06 and one dog, watch television and occasionally go to a drive-in movie with her boyfriend, text

07 message, and use Facebook demonstrate a higher level of functioning than alleged.  (AR 18-

08 19.)  The ALJ posited that Plaintiff self-imposes limitations on her daily activities — such as

09 a reluctance to go grocery shopping or take on cleaning tasks — given that she retained the

10 ability to complete culinary school in 2004, move in with her boyfriend, drive a car, make and

11 keep appointments, and track her benefits accounts.  (AR 18.)

12        Plaintiff disputes the ALJ's conclusion, arguing that her limited activities are not

13 inconsistent with her allegations, and that the ALJ erred by failing to "explain[] what

14 activities show that she can still have occasional interactions with co-workers and supervisors,

15 the ability to work in close proximity to these co-workers, and failed to even mention whether

16 she is capable of accepting criticism from supervisors, maintain appropriate hygiene,

17 attendance and behavior." Dkt. 23 at 9.  Plaintiff cites no authority for the proposition that an

18 ALJ must support her RFC assessment with specific references to corroborating daily

19 activities; the Court will focus on assessing whether the ALJ was reasonable in finding that

20 Plaintiff's activities were inconsistent with her allegations.

21        The only activities that the ALJ specifically identified that directly contradict an

22 allegation at issue in this case are Plaintiff's abilities to get along with her grandparents and

her boyfriend. The ALJ described how Plaintiff lives with her grandparents and has maintained a long-term relationship, and infers from these circumstances that Plaintiff "is able to be around others, contrary to her allegations." (AR 17.) The ALJ's inference overstates the extent of Plaintiff's allegations: she did not allege that she cannot be around others at all, but that her ability to socialize is limited by the isolation caused by her panic attacks and headaches, which leads her to stay home and thus disconnect from friends. (AR 268.) Plaintiff testified that she does not go out to eat with her boyfriend, but stays home and watches television with him. (AR 58-59.) Plaintiff's ability to live in the same house as her grandparents or her long-term boyfriend thus does not directly contradict her allegations.

The ALJ's other reason for discounting Plaintiff's credibility withstands scrutiny, however. The ALJ identified ways in which Plaintiff's treatment notes are inconsistent with her allegations, specifically in that her treatment for physical symptoms has been conservative. (AR 18.) The ALJ noted that Plaintiff had no surgical intervention, steroid injections, or narcotic pain medications, but instead has been prescribed only physical and massage therapy, and muscle relaxers. (*Id.*) Plaintiff's physical and massage therapy records show that her condition improved with this conservative treatment (AR 295-354), and this outcome undermines Plaintiff's testimony about the severity of her symptoms. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008). Because this is a clear and convincing reason to discount Plaintiff's credibility, the ALJ's adverse credibility determination should be affirmed.

Medical Opinions

Plaintiff assigns error to the ALJ's assessment of opinions provided by treating

psychiatrist Dr. Sandman and counselor Ms. Dieringer. Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An opinion provided by a non-acceptable medical source can be discounted upon providing germane reasons. *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996).

Plaintiff also argues that the ALJ erred in assigning "great weight" to State agency opinions, without accounting for all moderate limitations indicated therein.

A.   Dr. Sandman

Dr. Sandman signed a DSHS evaluation form co-authored with counselor Ms. Dieringer (AR 422-31), and the ALJ discounted this opinion as based on Plaintiff's non-credible self-report and inconsistent with the objective findings indicated in the evaluation notes. (AR 19.) Plaintiff contends that neither of the ALJ's reasons are legitimate, because a psychiatrist is entitled to rely on a patient's description of symptoms and because Dr. Sandman's findings are consistent with the treatment notes from her clinic.

As to the first reason, many of Dr. Sandman's notes reflect reliance on Plaintiff's self-report. For example, Dr. Sandman indicated that Plaintiff had low energy and low motivation to complete tasks, and reported difficulty in interacting with others. (AR 424.) Dr. Sandman also noted that Plaintiff reported difficulty remembering two-step instructions, but did not cite any mental status examination findings or other medical evidence to support this limitation. (AR 428.) She also recorded Plaintiff's description of medication side effects. (AR 428.) Given that the ALJ properly discounted Plaintiff's credibility, she was entitled to discount Dr.

REPORT AND RECOMMENDATION
PAGE -10

Sandman's opinion to the extent that she relied on Plaintiff's self-report in the absence of her own independent findings. *See Tommasetti*, 533 F.3d at 1041 (finding that an ALJ was entitled to discount a provider's opinion that "largely reflect[s] [the claimant's] reports of pain, with little independent analysis or diagnosis").

Furthermore, many of Dr. Sandman's few independent findings contradict her opinions. For example, although Dr. Sandman indicated that Plaintiff experienced memory problems (AR 428), she found Plaintiff's immediate, recent, and remote memory to be intact. (AR 431.) Dr. Sandman also indicated that Plaintiff had marked limitations in most cognitive categories (AR 428), but also found that Plaintiff had "no cognitive impairment." (AR 431.) These inconsistencies between Dr. Sandman's findings and Dr. Sandman's opinions are a second legitimate reason to discount Dr. Sandman's opinion. *See Tommasetti*, 533 F.3d at 1041.

B.   Ms. Dieringer

Ms. Dieringer completed a medical source statement in June 2011. (AR 433-35.) The ALJ assigned "little weight" to this report, on the grounds that it (1) was provided by a non-acceptable medical source, and (2) relied on Plaintiff's non-credible self-report. (AR 20.) Plaintiff does not address whether these reasons are germane. Dkt. 20 at 11-12. The first reason is not germane, but the second passes muster because Ms. Dieringer's justifications for limitations are based on Plaintiff's self-report rather than independent findings. *See* AR 434 (describing Plaintiff's work history and speculations as to how Plaintiff's symptoms would affect her in a work setting).

//

REPORT AND RECOMMENDATION
PAGE -11

C.     State agency consultants

Plaintiff contends that the ALJ erred in failing to account for the entirety of the opinion of State agency consultant Rita Flanagan, Ph.D., which indicated that Plaintiff had several "moderate" limitations. (AR 367-69.)

Dr. Flanagan's opinion does indicate some moderate limitations in the checkbox portion of the Mental Residual Functional Capacity Assessment (MRFCA) form, but the narrative portion of the form — the portion of the form that ALJs are instructed to rely upon when assessing a claimant's RFC — indicates that Plaintiff is capable of completing simple, routine tasks with occasional interaction with co-workers and the public despite various deficits. *See* AR 141, 369; Program Operations Manual System (POMS) DI 25020.010 at B.1 (ALJ should use narrative portion of MRFCA form, not checkbox portion of form, in assessing RFC)[4]. Though Dr. Flanagan's narrative incorporates by reference a previous MRFCA form that is not in the record, the Court can infer from the prior ALJ decision that the State agency consultant previously indicated that Plaintiff's moderate deficits were not disabling. *See* AR 141, 369.

### RFC Assessment

Plaintiff argues that the ALJ failed to comply with the requirements of SSR 96-8p when assessing her RFC, but her argument depends on the existence of errors previously rejected by the Court, specifically errors relating to assessing the medical evidence. Dkt. 23

---

[4] Although Plaintiff contends that courts do not give effect to the POMS' guidance as to MRFCA forms, she fails to recognize that many courts (including those in this District) do. *See, e.g.*, *Coleman v. Astrue*, 2013 WL 550536 , at *7 (D. Or. Feb. 11, 2013); *Buck v. Astrue*, 2011 WL 2600505, at *9 (W.D. Wash. Jun. 28, 2011). In light of the Ninth Circuit's recognition that POMS is "persuasive authority," this result is appropriate. *See Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006).

at 10-11. Because the ALJ's assessment of the medical evidence was not erroneous, as explained above, Plaintiff has not shown that the ALJ's RFC assessment was erroneous.

## CONCLUSION

For the reasons set forth above, the Court recommends this matter should be AFFIRMED.

DATED this 8th day of October, 2013.

Mary Alice Theiler
Chief United States Magistrate Judge